UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                    Plaintiff,                          DECISION & ORDER and
                                                        REPORT & RECOMMENDATION

          v.                                            07-CR-6028L

JEFFREY T. SWARTZ,

                    Defendant.
_____


## PRELIMINARY STATEMENT

          By Order of Hon. David G. Larimer, United States District Judge, dated March 2,

2007, all pretrial matters in the above captioned case have been referred to this Court pursuant to

28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 19).

          Defendant Jeffrey Swartz ("Swartz") is charged in a twelve-count superseding

indictment.  The first count charges that from December 2003 until September 2006, Swartz sent

electronic communications through the internet to an individual whom he believed to be under

the age of eighteen in order to attempt to induce that individual to engage in sexual activity for

which he could be charged with a criminal offense under the laws of the State of New York, in

violation of 18 U.S.C. § 2422(b).  Counts Two through Ten of the superseding indictment charge

that Swartz knowingly transported nine different images of child pornography in interstate and

foreign commerce by means of a computer, in violation of 18 U.S.C. § 2252A(a)(1).  The

transfer of the images charged in Counts Two through Six are alleged to have occurred on

September 4, 2005; the transfers charged in Counts Seven and Eight are alleged to have occurred

on September 22, 2005; and the transfers charged in Counts Nine and Ten are alleged to have

occurred on April 24, 2006.  Count Eleven charges that on both September 4, 2005 and June 15,

2006, Swartz knowingly received items of child pornography that had been transported in

interstate and foreign commerce by means of a computer, in violation of 18 U.S.C.

§ 2252A(a)(2)(A).  The final count charges that on June 15, 2006, Swartz knowingly possessed

material that contained images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

(Docket # 28).

        Currently pending for Report and Recommendation is Swartz's motion to

suppress tangible evidence seized pursuant to a search warrant issued by this Court for his

residence at 146 Green Moor Way, Apartment 7, in the town of Henrietta, New York.  Also

before the Court for Decision and Order is Swartz's motion for a bill of particulars.  (Docket

# 32).[1]


### REPORT & RECOMMENDATION

        Swartz moves to suppress all evidence seized from his apartment on June 15,

2006, on the grounds that the warrant authorizing the search lacked probable cause and was

based upon false and misleading statements contained in the supporting affidavit.  (Docket # 33).

For the following reasons, it is the recommendation of this Court that Swartz's motion be denied.

---

[1] Swartz's omnibus motions also sought, *inter alia*, discovery and inspection, *Brady* material, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, *Jencks* material, the preservation of rough notes and inspection of the grand jury wheel.  With the exception of the discovery motion, each of defendant's requests was either resolved by the parties, withdrawn or decided in open court by the undersigned on September 27, 2007.  (Docket ## 35, 36).

    As to the discovery motion, this Court has been advised that the parties have reached a tentative agreement resolving the open issues.  On the basis of that representation, defendant's motion for discovery is denied as moot without prejudice to renewal in the event that any issues remain unable to be resolved by the parties.

A.  **Weir's Affidavit Adequately Established Probable Cause**:  The

government's application for the search warrant was accompanied by an affidavit sworn to by

Special Agent Timothy R. Weir of the Federal Bureau of Investigation ("FBI") describing the

factual basis for his opinion that probable cause existed to believe that evidence of the

transmission and receipt of child pornography would be found at the residence located at 146

Green Moor Way, Apartment 7, Henrietta, New York.  (Docket # 33-2 ("Weir Aff.")).  Review

of Weir's affidavit makes clear that his conclusion was based primarily upon evidence derived

from an undercover investigation conducted by another FBI agent, Steven Forrest.

As Weir's affidavit explains, on August 8, 2005, Special Agent Forrest, acting in

an undercover capacity, entered an America Online ("AOL") chat room[2] entitled,

"vy123456789101112."  (Weir Aff. at ¶ 16).  There, he received an email communication from

an individual using the AOL screen name "JHawk184."  The communication included a message

instructing, "REMOVE ME NOW."  Forrest replied with an instant message[3] to JHawk184

stating that he had not added JHawk184 to any list servers, which prompted a brief exchange

between the agent and JHawk184 about list servers.  Following that exchange, JHawk184

emailed Forrest, "u got any pix of yung girls?"  Forrest and JHawk184 then discussed trading

images of children engaging in sexual activity, but did not do so on that occasion.  (Weir Aff. at

¶ 16).

---

[2]  According to Weir, a chat room is "an electronic meeting room provided by AOL and other similar services, which allows Internet users to have group discussions."  (Weir Aff. at ¶ 12A).

[3]  According to Weir, "'Instant Messaging (IM)' is real-time typewritten conversation between individuals, much like an oral conversation, and is used to conduct one-on-one conversations."  (Weir Aff. at ¶ 12C).

Several weeks later, on September 22, 2005, Forrest visited a different AOL chat room entitled, "Early years 10, 11, 12."  While he was in the room, he sent a message to the other users announcing that he had videos to trade.  An individual using the AOL screen name "PHILLIEBOY1077" responded, "I am dying to look at vid 6 to 11 sucking and facials u have any please."  Forrest and this individual thereafter discussed trading images of children engaging in sexual activity.  (Weir Aff. at ¶ 17).  Later that day, at approximately 9:20 p.m., Forrest received an email from PHILLIEBOY1077 containing a forty-four second video file, which depicted individuals who appeared to be prepubescent children engaging in sexually explicit conduct.  The email header associated with the transmission of the video revealed that PHILLIEBOY1077 had received the video from JHawk184 approximately seven minutes before he sent it to Forrest.  (Weir Aff. at ¶ 18).

Within minutes, Forrest observed that JHawk184 was signed onto AOL and was in a chat room entitled, "Very Little Openings."  Forrest entered the chat room and observed JHawk184 post a message asking, "ANYONE HAVE PIX OF YUNG BLACK PUSSY."  At approximately 9:22 p.m., Forrest initiated a conversation by instant messaging with JHawk184 during which they discussed trading images of children engaged in sexual activity.  (Weir Aff. at ¶ 19).  Approximately five minutes later, Forrest received an email from JHawk184 containing a thirty-six second video file, which depicted an adult male engaging in sexually explicit conduct with a young child.  The email header revealed that JHawk184 had received the video on September 6, 2005 from an individual using AOL screen name PIXIELISA15.  (Weir Aff. at ¶ 20).

4

Forrest thereafter subpoenaed records from AOL to determine the identity of the subscriber associated with screen name JHawk184.  According to Weir's affidavit, AOL advised Forrest that the screen name JHawk184 was registered to Jeff Swartz at 146 Green Moor Way, Apartment 7, Henrietta, New York, with a daytime telephone number of 585-615-9031 and an evening telephone number of 585-359-9119.  AOL's subpoena response further disclosed that Swartz had been an AOL member since October 5, 2005.  (Weir Aff. at ¶ 21).

In addition, the subpoena also sought Internet Protocol ("IP") address "data log" information for the time period within which JHawk184 sent the video file to Forrest on September 22, 2005.  According to Weir, this request was made in an effort to determine the telephone number or cable connection utilized by JHawk184 to connect to AOL during the time the video was sent.  (Weir Aff. at ¶ 22).  On October 6, 2005, AOL advised Forrest that on September 22, 2005, between 9:51 p.m. and 10:13 p.m., user JHawk184 utilized IP address 209.244.189.87 to access AOL.  Forrest further determined that that IP address was assigned to Level 3 Communications.  By subpoena, Level 3 Communications disclosed that during the above time period, IP address 209.244.189.87 was assigned to JHawk184 and was accessed through telephone number 585-359-9119 (one of the telephone numbers associated with Jeff Swartz's AOL subscription for the screen name JHawk184).  (Weir Aff. at ¶¶ 24-26).  In addition, a subpoena served upon Frontier Communications revealed that telephone number 585-359-9119 was subscribed to Jeffrey T. Swartz at 146 Green Moor Way, Apartment 7, as of August 24, 2004.  (Weir Aff. at ¶ 27).

Several months later, on April 24, 2006, Forrest entered another AOL chat room – this one entitled, "duhter fivesixseven."  There, he observed JHawk184 send a message to other

users asking, "aanyone got pix . . . IM mw."  Forrest sent an instant message to JHawk184 at approximately 9:39 a.m. asking whether he had videos to trade.  JHawk184 responded, "I'll trade u pix for vids . . . I don't have any vids."  During their ensuing conversation, Forrest and JHawk184 discussed trading images of children engaging in sexual activity, and JHawk184 represented that he was a twenty-three year old male from Rochester, New York.  (Weir Aff. at ¶ 28).

A few minutes later, at approximately 9:48 a.m., Forrest received two emails from JHawk184.  The first email contained two images, the first depicting a naked prepubescent female and the other depicting an adult male engaging in sexually explicit conduct with a female minor.  The second email contained a single photograph depicting an adult male engaging in sexually explicit conduct with a prepubescent female.  The header for both emails revealed that JHawk184 had received all three images three days earlier from an individual using AOL screen name LITTLEGINNY.  (Weir Aff. at ¶¶ 29-30).

As before, Forrest served a subpoena upon AOL requesting subscriber information for JHawk184, including IP data log information for the time period within which the images were transmitted by JHawk184.[4]  (Weir Aff. at ¶¶ 31-32).  AOL responded that user name JHawk184 was registered to Jeff Swartz and provided the same address and telephone numbers and again disclosed that he had been an AOL member since October 5, 2005.  (Weir Aff. at ¶ 31).  AOL further revealed that JHawk184 had used telephone number 585-359-9119 to

---

[4]  Weir's affidavit indicates that the second subpoena was served upon AOL on April 25, 2005.  (Weir Aff. at ¶ 31).  Based upon the chronology of events, and Weir's reference to the "previous subpoena" that was served in September 2005, the affidavit's reference to April 25, 2005, rather than 2006, appears to be a typographical error. (*See* Weir Aff. at ¶ 32).

access IP address 209.244.187.250 on April 24, 2006 between 9:45 a.m. and 10:19 a.m.  (Weir

Aff. at ¶¶ 32-33).  Another subpoena served on Frontier Communications on June 1, 2006

confirmed that Swartz was the subscriber for telephone number 585-359-9119 at 146 Green

Moor Way, Apartment 7.  (Weir Aff. at ¶ 34).

Finally, Weir affirmed in his affidavit that a search of various public records

databases confirmed that Swartz was born in 1982, making him twenty-three years old – the

same age as JHawk184 had represented himself to be.  (Weir Aff. at ¶¶ 36-37).

Swartz challenges the adequacy of the probable cause for the warrant authorizing

the search of his residence.  (Docket # 32).  The Fourth Amendment to the Constitution provides

that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized."  U.S.

Const. amend. IV; *see also* Fed. R. Crim. P. 41.  In *Illinois v. Gates*, 462 U.S. 213 (1983), the

Supreme Court affirmed the applicability of the "totality of the circumstances" test to determine

whether a search warrant satisfies the Fourth Amendment's probable cause requirement.

According to the Court, the issuing judicial officer must "make a practical, common-sense

decision whether, given all the circumstances set forth in the affidavit before him, including the

'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place."  *Id.* at 238.

Ordinarily, a reviewing court's obligation is to determine whether the issuing

judge had a "'substantial basis for... conclud[ing]' that probable cause existed," *United States v.

Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. at 238-39) (internal

quotation omitted).  Here, because I was the issuing magistrate, I have reviewed Special Agent

Weir's affidavit *de novo* as to the issue of probable cause. I reaffirm my finding that probable cause existed for the search.

Weir's affidavit described two separate occasions on which an individual using the screen name JHawk184 appeared in AOL chat rooms and engaged in communications through instant messaging with an undercover FBI agent about trading images of child pornography. On both occasions (September 22, 2005 and April 24, 2006), JHawk184 sent emails containing child pornography images to the agent. According to AOL records, the screen name JHawk184 was registered to Jeff Swartz at 146 Green Moor Way, Apartment 7, Henrietta, New York, with a telephone number that was determined to have accessed AOL on the dates and approximate times that the challenged images were sent. That telephone number, 585-359-9119, was subscribed by Swartz at 146 Green Moor Way, Apartment 7. On this record, I find that the evidence presented in Weir's supporting affidavit was sufficient to establish probable cause to believe that evidence of child pornography would be found at 146 Green Moor Way, Apartment 7. *See United States v. Coreas*, 426 F.3d 615, 616 (2d Cir. 2005) ("a search warrant requires only probable cause that the place to be searched contains evidence of a crime, not probable cause to believe that the occupant of the place has committed that crime") (citing *United States v. Martin*, 426 F.3d 83 (2d Cir. 2005)), *cert. denied*, 126 S. Ct. 2861 (2006).

**B. Weir's Affidavit did not Contain Materially False Statements:** Swartz also moves to suppress, or in the alternative for a *Franks* hearing, on the grounds that Weir's affidavit contained false or misleading statements. (Docket # 32).

As the Supreme Court held in *Franks v. Delaware*, 438 U.S. 154 (1978), "a district court may not admit evidence seized pursuant to a warrant if the warrant was based on

materially false and misleading information."  *United States v. Levasseur*, 816 F.2d 37, 43 (2d

Cir. 1987) (citing *Franks v. Delaware*, 438 U.S. at 154), *cert. denied*, 507 U.S. 954 (1993).  To

warrant a hearing under *Franks*, a defendant challenging an affidavit must make "a substantial

preliminary showing that (1) the affidavit contained false statements made knowingly or

intentionally, or with reckless disregard for the truth; and (2) the challenged statements or

omissions were necessary to the Magistrate's probable cause finding."  *Id.* (citing *Franks*, 438

U.S. at 171-72) (internal quotation omitted).  A hearing is required if the defendant provides the

court with a sufficient basis upon which to doubt the truth of the affidavit at issue.  As the

Supreme Court has explained:

> To mandate an evidentiary hearing, the challenger's attack must be
> more than conclusory and must be supported by more than a mere
> desire to cross-examine.  There must be allegations of deliberate
> falsehood or of reckless disregard for the truth, and those
> allegations must be accompanied by an offer of proof.  They should
> point out specifically the portion of the warrant affidavit that is
> claimed to be false; and they should be accompanied by a
> statement of supporting reasons.  Affidavits or sworn or otherwise
> reliable statements of witnesses should be furnished, or their
> absence satisfactorily explained.  Allegations of negligence or
> innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.  A *Franks* hearing is not required where it is sought merely on the basis

of an allegation that the information in the search warrant affidavit subsequently proved to be

inaccurate, especially where that information derives from a source independent of the affiant.

*See id.* ("[t]he deliberate falsity or reckless disregard whose impeachment is permitted . . . is only

that of the affiant, not of any nongovernmental informant").

      In the instant matter, Swartz argues that Weir's assertion that Swartz was the

subscriber of the AOL screen name JHawk184 was materially false.  To support his contention,

he cites to the allegation in Weir's affidavit that AOL records disclosed that Swartz had been an AOL subscriber since October 5, 2005 – after the first alleged transmission of images of child pornography.  The government has not explained the apparent discrepancy.

Swartz does not argue, nor could he, that Weir's affidavit was false or misleading because it failed to disclose the existence of AOL records reflecting that he had been an AOL member since October of 2005.  The fact of the matter is that Weir's affidavit disclosed the existence of that information.

Recognizing that, Swartz apparently argues that Weir's affidavit was false because he represented that Swartz was the subscriber of the user name JHawk184 when JHawk184 transmitted the challenged images in September 2005.  The affidavit makes no such explicit representation, however.  Rather, the affidavit represents that Weir believed that probable cause existed to believe that evidence of child pornography offenses would be found at 146 Green Moor Way, Apartment 7.  Reviewing Weir's affidavit in total, I conclude that a hearing concerning the genuineness of Weir's belief is unwarranted.

While the apparent discrepancy is indeed curious, the remainder of the factual allegations in Weir's affidavit amply justify Weir's conclusion that probable cause for the warrant existed.  For example, information provided by AOL and Level 3 Communications revealed that JHawk184 had accessed the internet on September 22, 2005 through IP address 209.244.189.87 using telephone number 585-359-9119, a telephone number subscribed by Swartz at 146 Green Moor Way, Apartment 7.  (Weir Aff. at ¶¶ 24, 27).  In light of this evidence – as well as the detailed allegations demonstrating that JHawk184 also transmitted images of child pornography to the undercover agent several months later, also at a time when JHawk184

10

accessed the internet through the same telephone line – I conclude that the membership date referenced in Weir's affidavit must have been an error.  Whether that error was a typographical error by Weir or a mistake in AOL's records is immaterial.

For these reasons, I recommend denial of Swartz's motion for suppression or a *Franks* hearing on the basis of allegedly false or misleading statements by Weir in his supporting affidavit.

**C.  <u>Executing Officers Relied upon Warrant in Good Faith</u>:**  In any event, even if probable cause were wanting, nothing in the record suggests that the searching officers did not rely upon the warrant in good faith.  In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was based on "objective good faith," even though the warrant itself might ultimately be found to be defective.  *Id.* at 918-23; *United States v. Salameh*, 152 F.3d 88, 114 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Benedict*, 104 F. Supp. 2d 175, 182 (W.D.N.Y. 2000).  The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity."  *United States v. Leon*, 468 U.S. at 919.

The Court in *Leon* identified four situations in which the good faith exception is inapplicable.  Specifically, an executing officer's reliance on a search warrant will not be deemed to have been in good faith:

(1) where the issuing magistrate had been knowingly misled;

(2) where the issuing magistrate wholly abandoned his or her

11

judicial role;

(3) where the application is so lacking in indicia of probable cause
as to render reliance upon it unreasonable; and

(4) where the warrant is so facially deficient that reliance upon it is
unreasonable.

*Id.* at 923.  *See United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).

Here, as described above, I find that Weir's affidavit was not knowingly

misleading, nor has Swartz presented any evidence to suggest that the Court wholly abandoned

its duties.  Moreover, Weir's affidavit set forth a detailed description of the investigation relating

to the emails containing child pornography sent over the internet using the telephone line

registered to Swartz's apartment.  Considering that description, it simply cannot be said that the

search warrant application was so lacking in probable cause as to render the executing officer's

reliance upon it unreasonable.  Finally, I find that the search warrant was not so facially deficient

that it would have been unreasonable for the searching officers to rely upon it.  Accordingly, even

if the search warrant for 146 Green Moor Way, Apartment 7 was not supported by probable

cause, Swartz's motion to suppress the evidence seized from his residence should also be denied

under the *Leon* good-faith exception.

Accordingly, it is the recommendation of this Court that Swartz's motion to

suppress evidence from his apartment on the grounds that the search warrant was unsupported by

probable cause be denied.

**DECISION & ORDER**

Swartz also moves for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure describing in more detail the factual support for each of the twelve counts of the superseding indictment pending against him. (Docket # 32). The government opposes the motion.

The purpose of a bill of particulars is to enable the defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted) (per curiam). A bill of particulars is not to be used as a discovery device to obtain "evidentiary detail" about the government's case. *See, e.g.*, *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (citation omitted), *cert. denied*, 498 U.S. 906 (1990). In other words, a bill of particulars should be granted where the information sought is "necessary" to prepare a defense and to avoid double jeopardy, not where it is merely "useful" to the defense in ascertaining the government's proof. *See United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994); *see also United States v. Love*, 859 F. Supp. 725, 738 (S.D.N.Y.), *aff'd sub nom. United States v. Roberts*, 41 F.3d 1501 (2d Cir. 1994). Where the charge against the defendant is broad in scope, a bill of particulars may be more appropriate than where the charged conduct is more narrow. *See, e.g.*, *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998) ("a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge"); *United States v. Davidoff*, 845 F.2d 1151, 1154-55 (2d Cir. 1988) (district court abused

13

discretion in denying a bill of particulars identifying victims in seven-year racketeering conspiracy; court noted that principles governing bills of particulars "must be applied with some care when the [g]overnment charges criminal offenses under statutes as broad as RICO").

To warrant a bill of particulars, the indictment's charges against a defendant must be so general that they fail to advise him or her of the specific acts of which they are accused. *See United States v. Torres*, 901 F.2d at 234; *United States v. Henry*, 861 F. Supp. at 1198.  In determining that question, the court may consider whether the information sought by the defendant has been made available in alternative forms, such as in discovery or prior court proceedings.  *See United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984); *United States v. Kelly*, 91 F. Supp. 2d 580, 583-84 (S.D.N.Y. 2000); *United States v. Ahmad*, 992 F. Supp. 682, 684 (S.D.N.Y. 1998); *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834 (1989).

In this case, Swartz has been provided with voluntary discovery, which the government asserts adequately advises him of the charges against him and the nature of the government's case.  (Docket # 33).  I agree.

The twelve-count superseding indictment filed against Swartz provides him with sufficient information to understand the charges against him.  In addition, the above-referenced search warrant and supporting affidavit, along with the other discovery materials provided, which include copies of the allegedly inducing communications charged in Count One and disclosure of the images charged in the remaining counts, adequately disclose the government's factual bases for the charges.  On this record, I find that Swartz has sufficient information to prepare his defense, to avoid unfair surprise and to interpose a claim of double jeopardy, if appropriate.  *See*

14

*United States v. Bortnovsky*, 820 F.2d at 574.  Accordingly, Swartz's motion for a bill of particulars is denied.

## CONCLUSION

For the foregoing reasons, it is my recommendation that Swartz's motion to suppress tangible evidence **(Docket # 32)** be **DENIED**.  It is also the decision and order of this Court that Swartz's motion for a bill of particulars **(Docket # 32)** is **DENIED**.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
November   8  , 2007

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

    **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

    **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

    The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

    <u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

    The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>**Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**</u>

    Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**


                             *s/Marian W. Payson*
                               MARIAN W. PAYSON
                          United States Magistrate Judge


Dated: Rochester, New York
        November   8  , 2007

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).